RATTET, PASTERNAK & GORDON OLIVER, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
Telephone: (914) 381-7400
Facsimile: (914) 381-7406
Jonathan S. Pasternak, Esq. (JP-6107)
Attorneys for Kocaim Realty LLC and
4327-4337 Bronx Boulevard Realty, LLC, Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:

KOCAIM REALTY, LLC and
4327-4337 BRONX BLVD. REALTY, LLC
a/k/a BIG APPLE 4327-4337 BRONX BLVD.
REALTY, LLC

    Chapter 11 Case

    Case No. 07 B 11797 (ALG)
    Case No. 07 B 11799 (ALG)
    (Jointly Administered)

                Debtors.
-------------------------------------------------------------------x

TO: THE HONORABLE ALLAN L. GROPPER,
     UNITED STATES BANKRUPTCY JUDGE

**APPLICATION OF DEBTORS FOR (A) AUTHORITY TO RETAIN
SHELDON GOOD & COMPANY AUCTIONS NORTHEAST LLC AS EXCLUSIVE
AUCTIONEER AND (B) APPROVAL OF TERMS AND CONDITIONS OF COMPENSATION**

The Application of Kocaim Realty LLC and 4327-4337 Bronx Realty, LLC, Debtors-in-Possession (the "Debtors"), by their attorneys, Rattet, Pasternak & Gordon Oliver, LLP, pursuant to §§327, 328 and 330 of the Bankruptcy Code to retain Sheldon Good & Company Auctions NorthEast, LLC ("Sheldon Good"), as (A) the Debtor's exclusive auctioneer to market and sell by auction the Debtor's improved real property known as and located at (i) 4352 Bronx Boulevard, Bronx, NY 10466, (ii) 4353 Bronx Boulevard, Bronx, NY 10466, and (iii) 4337 Bronx Boulevard, Bronx, NY 10466 (jointly, the "Premises" and each separately a "Property"), and (B) for this Court to authorize and approve the terms and conditions of Sheldon Good's retention by the Debtor, and the proposed auctioneer agreement entered into between the Debtors and Sheldon Good annexed hereto as Exhibit "A" (the "Auction Agreement"), respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these proceedings and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are §§ 327 and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2. On June 11, 2007, each Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

3. Debtor Kocaim Realty, LLC is in the business of owning mixed commercial and residential zoned real property located at 4352-4353 Bronx Blvd., Bronx, NY 10466, together with a contiguous parcel of land owned by Debtor 4327-4337 Bronx Blvd., LLC.

4. The Premises used to be occupied by a former Hyundai dealership which was owned under a separate and distinct corporation known as Kocaim Automotive, LLC.

5. Since the sale of the dealership, Petitioner has had no ability to service the various mortgages on the Property and began a vigorous national marketing of the Property, which has already generated several potential offers, which Petitioner now desires to consummate through an auction process in the Bankruptcy Court.

## RETENTION OF SHELDON GOOD

6. Sheldon Good was selected by the Debtors as their exclusive auctioneer because Sheldon Good has extensive worldwide experience and expertise in providing strategic real estate marketing, auction and brokerage services. Since 1965, Sheldon Good has sold over thirty seven thousand

(37,000) properties in the United States, Canada and within the Caribbean Islands, with a total sales value of over $8 billion.

7. Accordingly, the Debtors believe that the retention of Sheldon Good is in the best interest of the Debtors' chapter 11 cases and that Sheldon Good will maximize the return to the Debtors' estates from the sale of the Premises. The Debtors respectfully submit that it is in the best interest of the Debtors, the Debtors' chapter 11 estates and all of the creditors of the Debtors to retain Sheldon Good as the Debtors' exclusive auctioneer.

**Auction Agreement**

8. Sheldon Good has provided the Debtors with its Standard Exclusive Real Estate Auction Agreement (the "Auction Agreement"), an executed copy of which is annexed hereto as Exhibit "A", which provides the proposed terms and conditions of Sheldon Good's retention and compensation, subject to the approval of the Bankruptcy Court. In accordance with the terms of the Auction Agreement, the professional services which Sheldon Good, if approved as exclusive auctioneer, shall render to the Debtors include, but are not limited to:

(a) Procuring a purchaser for the Properties of the Debtors;

(b) Appearing in the Bankruptcy Court, if necessary, to represent and protect the interests of the Debtors under the Auction Agreement;

(c) Showing the Properties to prospective bidders;

(d) Advertising the Properties by appropriate means, including, but not limited to, newspapers, television, radio, internet, display signs and such other steps to procure buyers for the Premises as Sheldon Good deems appropriate;

(e) cooperate and negotiate with third-party brokers; and

(f) Perform such other services for the Debtors as may become necessary and appropriate to protect the Debtors' interests in the Properties.

9. Section V, paragraph A, of the Auction Agreement provides the terms of Sheldon Good's compensation for the above services, in pertinent part, as follows:

**"V. Commission and Marketing Expanses of Auctioneer**

A. Seller agrees to pay Sheldon Good hereinafter referred to as "Auctioneer") for its services listed hereunder:

* * *

2. An amount equal to 7% of the high bid price of the Premises (including amounts secured by encumbrances of record), if a Purchaser is procured at a price either set or accepted by Seller without a Cooperating Broker before, at or after the Auction...

* * *

4. Auctioneer and Seller agree that a 7.0% <u>buyer's premium</u> will be added to the high bid price to determine the gross sales price of [each Property] ...and shall be [retained] ...by

Seller at closing. If the Purchase-and Sale Agreement does not contain a stated buyer's premium, the Auctioneer's commission shall remain unaffected... (Emphasis added.)

* * *

6. An amount equal to 7% of the high bid price, (including amounts secured by encumbrances of record) if the Premises [or a Property) are sold, or otherwise transferred within six (6) months following the actual or the scheduled auction date, whichever is later, or Seller enters into a sales contract or lease of the Premises with, or negotiations continue, resume or commence and thereafter continue leading to a sale or lease of the Premises to any person or entity (including all successors, assigns or affiliates) with whom Auctioneer has negotiated (either directly or through a Cooperating Broker), or to whom...[each Property)Premises was submitted by Auctioneer during the Term or to anyone with whom Seller has dealt during the Term, payable in full in cash.

7. Seller agrees that for a period of thirty (30) days following the time which the :Property or any unit thereof originally sold during the term of this Agreement, becomes available for sale because the original Purchaser whose contract is accepted by Seller during the term of this Agreement ("Accepted Sales Contract") at the auction fails or refuses to enter into or perform under the Accepted Sales Contract, does not receive credit approval or exercises any right of rescission or cancellation expressly available under the Accepted Sales Contract, then Seller agrees to sell the Premises [or each Property) at a price equal to the gross sales price obtained under the Accepted Sales Contract and

Seller agrees to pay Auctioneer as specified under Section V of the Auction Agreement.

8. Any discount, reduction, rebate, credit or offset from the high bid price or the gross sales price given to the Purchaser by the Seller after the Sales Contract is signed or as contemplated in the Sales Contract which affects the final high bid price or gross sales price shall not reduce Auctioneer's commission as specified in Section V of the Auction Agreement.

**Marketing Expenses**

10. In addition to the foregoing, Section V, paragraph B, of the Auction Agreement provides Sheldon Good shall advance $50,000.00 on behalf of the Debtors upon the execution of the Auction Agreement toward marketing expenses (the "Marketing Expenses"). Marketing Expenses are defined in the contract as those incurred for advertising, publicity, personnel, public relations, license(s), signage, promotional printing, mailing, meeting facilities, reproduction, travel, facsimile transmission, transportation, long distance telephone, internet charges, photographs and other expenses. Sheldon Good shall have a super-priority administrative expense claim in the Debtors' chapter 11 case for these Marketing Expenses. The Debtors require Sheldon Good to advance the expense monies since they have no current ability to fund the marketing expenses that will be required in the auction process contemplated herein.

11. Any commission and/or reimbursement of expenses, other then the above-mentioned $40,000.00 in Marketing Expenses, shall only be paid from the proceeds of sale.

**Disinterestedness**

12. To the best of the Debtors' knowledge, information and belief, Sheldon Good does not: (i) hold or represent an interest adverse to the Debtor's estate; (ii) have any connection with the Debtors, any of its creditors or parties in interest, or their respective attorneys and accountants; or (iii) have any connection with the United States Trustee or any person employed in the Office of the United States Trustee, except as may be set forth in the Affidavit of Jeffrey Hubbard, Designated Project Salesperson for Sheldon Good, a copy of which is annexed hereto as Exhibit "B".

13. Upon information and belief, Sheldon Good is a "disinterested person" as such term is defined in § 101(14) of the Bankruptcy Code, with respect to the Debtors and their estates. The employment of Sheldon Good as the Debtors' exclusive auctioneer in these chapter 11 cases is both necessary and in the best interests of the Debtors and their estates.

14. Sheldon Good will be paid for its auction and marketing services in accordance with Section V of the Auction Agreement at the conclusion of the projected sales closings, after approval of the sale prices by the Bankruptcy Court and collection of the proceeds of sale from the prospective purchaser at closing.

**WHEREFORE,** the Debtors respectfully request the entry of the pre-fixed Order (i) authorizing the retention of Sheldon Good as the Debtor's exclusive auctioneer, (ii) approving the terms and conditions of the Auction Agreement with respect to compensation of Sheldon Good and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Harrison, New York
June 21, 2007

Respectfully submitted,

RATTET, PASTERNAK & GORDON OLIVER, LLP
Attorneys for the Debtors
550 Mamaroneck Avenue
Harrison, New York 10528
Telephone: (914) 381-7400


By: /s/ Jonathan S. Pasternak
   Jonathan S. Pasternak (JP-6107)